**Paul PATZ, et al., Plaintiffs,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

Civ. A. No. 89–C–464.

United States District Court, E.D. Wisconsin.

April 6, 1993.

Roy W. Keith, Pound, WI, Dean Lang, O'Neil, Cannon & Hollman, Milwaukee, WI, for plaintiffs.

Thomas Schrimpf, Hinshaw & Culbertson, Milwaukee, WI, for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

The plaintiff Patz Sales, Inc. ("Patz"), located in Pound, Wisconsin, is a business which, among other things, designs and manufactures barn gutter cleaners and farm material handling equipment. The defendant St. Paul Fire and Marine Insurance Company ("St. Paul") is a Minnesota insurance company which provided Patz with liability insurance from February 1978 through February 1982.

The Patz manufacturing process generates industrial waste. From approximately 1970 to 1980, some of this industrial waste was disposed of in a seepage pit on the Patz plant premises. In addition, barrels of sludge generated from a spray painting process were disposed of in various ways; some were buried on Patz premises. In 1986, the Wisconsin Department of Natural Resources determined that groundwater on the Patz premises was contaminated and requested that Patz remove the seepage pit ground and the barrels of sludge, and also ordered groundwater monitoring. In its complaint, Patz seeks recovery of these clean-up costs. St. Paul maintains that various policy exclusions preclude coverage.

On February 21, 1992, a jury found that Patz did not "expect and intend" to cause environmental contamination by operating the pit area or by burying the barrels of paint sludge and awarded Patz damages. Presently before the court is St. Paul's post-trial motion to dismiss this action because its policies' owned-property exclusion precludes coverage for Patz's damages.[1]

This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1) because this action is between citizens of different states and the amount in controversy exceeds $50,000. As such, this court must apply the substantive law of Wisconsin to this action. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

For the following reasons, this court denies St. Paul's motion to dismiss.

## ANALYSIS

St. Paul's policies include the following exclusion clause:

This insurance does not apply:

(j) to property damage to

(1) property owned or occupied by or rented to the Insured;

(2) property used by the Insured, or

(3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control.

(Mar. 30, 1990 Mot. Attachs., St. Paul Comprehensive General Liability Insurance Coverage Form–Broad at 1.) St. Paul argues

---

1. St. Paul also argues that Patz's damages are not covered because Patz expected and intended the release of pollutants. This court previously declined to grant St. Paul's motion for summary judgment on this ground. The jury determined that Patz did not "expect or intend" any environmental contamination. St. Paul merely states in its brief that it reincorporates its previous arguments on this point, but does not challenge the jury instructions or the jury's finding. This court will therefore not address this issue.

that any damages[2] which occurred only affected Patz's property or property under it's control, and that the owned-property clause therefore precludes Patz's recovery of damages in this action.

> The parties have stipulated that
>
> [f]or purposes of this legal issue [whether the owned-property exclusion bars recovery], the parties stipulate that groundwater contamination existed on the Patz premises as a result of an occurrence within the timing of St. Paul's coverage but that, due to the remediation efforts undertaken by Patz, the groundwater contamination had not yet spread to off-site properties.

(Feb. 17, 1992 Stipulation at 1–2.)

*Groundwater Contamination*

■ Patz argues that any groundwater contamination which occurred was not damage to property owned by it, because groundwater is owned by the public rather than individual landowners. As quoted above, the parties have stipulated that groundwater contamination did occur. St. Paul does not address this aspect of Patz's position. This court agrees with Patz:

> "Waters of the state" includes those portions of Lake Michigan and Lake Superior within the boundaries of Wisconsin, and all lakes, bays, rivers, streams, springs, ponds, wells, impounding reservoirs, marshes, watercourses, drainage systems and other surface water or *groundwater,* natural or artificial, public or private, within the state or its jurisdiction.

Wis.Stat. § 144.01(19) (1991–1992) (emphasis added). It is clear that the groundwater contamination was not damage to property owned by Patz, and therefore does not fall under the owned-property exclusion.

*Remaining Contamination: Seepage Pit, Barrels, and Soil*

■ This court has been able to find only one Wisconsin case which specifically addresses the owned-property exclusion in an environmental context. *City of Edgerton v. General Cas. Co.,* 172 Wis.2d 518, 493 N.W.2d 768 (Ct.App.1992), *review granted.* This case was decided after the parties submitted their briefs on the present issue. In *Edgerton,* the court states that

> We adopt the reasoning of those courts which have held that the owned-property exclusion does not apply where the concern is not primarily the premises of the insured, but rather the substantial harm, or risk of substantial harm, to third-party property, including natural resources belonging to the people of the state. *See* cases collected in the Annotation, *Liability Insurance Coverage For Violations of Antipollution Laws,* 87 A.L.R. 4th 444, §§ 27, 28[a] at 536–45 (1991 & Supp.1992).

*Edgerton* at 554–555, 493 N.W.2d 768. *See also Maryland Cas. Co. v. Wausau Chemical Corp.,* 809 F.Supp. 680, 693 (W.D.Wis.1992).

In support of its contention that Patz's clean-up costs are not covered, St. Paul cites *W. World Ins. Co. v. Dana,* 765 F.Supp. 1011 (E.D.Cal.1991), and *State v. Signo Trading Int'l, Inc.,* 235 N.J.Super. 321, 562 A.2d 251 (1989), *aff'd,* 130 N.J. 51, 612 A.2d 932 (1992). The courts in those cases held that certain environmental clean-up costs were not recoverable from insurance companies in light of an owned-property exclusion.[3]

In *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551 (9th Cir.1991), the court held that the owned-property exclusion

> does not bar coverage of the costs of preventing future harm to ground water or adjacent property that might arise from contamination that has already taken place, whether such contamination has occurred on Intel's or others' property.

*Intel* at 1565. This court believes that *Intel* represents the majority view of those courts which have addressed the issue, and does not find the cases cited by St. Paul to be persua-

---

2. This court has previously held that Patz's clean-up costs are "damages" under St. Paul's policies. (Jan. 3, 1992 Decision and Order at 7.)

3. St. Paul's citation of *A.Y. McDonald Indus. Inc. v. Ins. Co. of N. Am.,* 475 N.W.2d 607 (Iowa 1991) is unpersuasive, as that court addressed whether environmental clean-up costs constituted "property damage," and did not address an owned-property exclusion clause.

sive and necessarily analogous to this action. And, with the recent court of appeals decision in *Edgerton,* 172 Wis.2d 518, 493 N.W.2d 768, this court concludes that because the contamination in this action posed a threat to off-site property, Patz's damages are covered.

The area of environmental damage presents unique questions of insurance coverage because there is always the potential that contamination will spread. As a policy matter, it is more desirable to take remedial action as soon as possible, rather than waiting until off-site environmental harm has occurred. While St. Paul argues that the primary clean-up cost with respect to the barrels was the physical removal and transportation of the barrels, both parties agree that there was soil contamination in the area where the barrels were located. Patz's expert and the parties agree that the seepage pit contamination would have reached off-site property. It was necessary to take remedial action at both sources of contamination to guarantee the prevention of future additional contamination of groundwater and off-site property.

This court concludes that the environmental clean-up costs incurred by Patz are recoverable from St. Paul.[4]

**IT IS THEREFORE ORDERED** that defendant St. Paul Fire and Marine Insurance Company's motion for judgment to dismiss is DENIED.

**IT IS FURTHER ORDERED** that the clerk is instructed to enter judgment in favor of plaintiff Patz Sales, Inc. and against defendant St. Paul Fire and Marine Insurance Company in the amount of $231,500.00.

---

**4.** The parties stipulated the amount of judgment to be entered against St. Paul if the jury found, as it did, that Patz did not intend to cause environmental contamination.